IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) SARAH REAGAN, as the Personal Representative for the Estate of Michael Reagan, Jr., deceased,<br><br>        Plaintiff,<br><br>    vs.<br><br>(1) OKMULGEE COUNTY CRIMINAL JUSTICE AUTHORITY, a public trust;<br>(2) THE BOARD OF COUNTY COMMISSIONERS OF OKMULGEE COUNTY;<br>(3) SAM MCCOY;<br>(4) RONALD SPEARS;<br>(5) NURSE JULIE BAUER, LPN;<br>(7) LISA WILSON, Captain;<br>(8) MIGUEL RIVERA, Sergeant; AND<br>(9) JOSEPH TERRY, Detention Officer,<br><br>        Defendants. | Case No. 20-cv-243-RAW<br><br>ATTORNEY LIEN CLAIMED<br>JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW** the Plaintiff, Sarah Reagan ("Plaintiff"), as Personal Representative of the Estate of Michael Reagan Jr, deceased ("Mr. Reagan"), by and through her attorneys of record, and for her causes of action against the Defendants, alleges and states as follows:

### JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

1

2. The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth Amendment and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

3. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4. Plaintiff is a resident of Okmulgee County, State of Oklahoma and the duly-appointed Personal Representative of the Estate of Michael Reagan, Jr. The survival causes of action in this matter are based on violations of Mr. Reagan's rights under the Fourteenth Amendment to the United States Constitution. Mr. Reagan was, at all times pertinent hereto, a pretrial detainee in the custody of the Defendants.

5. Defendant Okmulgee County Criminal Justice Authority ("OCCJA") is a public trust created pursuant to 60 Okla. Stat. §176, *et seq.*, organized to operate the Okmulgee County Jail ("the Jail"). OCCJA was, at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Jail. In addition, OCCJA along with the Board of County Commissioners of Okmulgee County is, and was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Jail, including the policies, practices, procedures, and/or customs which led to violations of Mr. Young's Constitutional rights as set forth in this Complaint

6. Defendant, The Board of County Commissioners of Okmulgee County, Oklahoma ("BOCC"), is a statutorily-created governmental entity. 57 Okla. Stat. § 41 provides that "[e]very county, by authority of the board of county commissioners and at the expense of the county, shall

have a jail or access to a jail in another county for the safekeeping of prisoners lawfully committed." BOCC must discharge its responsibilities of operation and maintenance of the Jail to the OCCJA in a constitutional manner.

7. Defendant, Sam McCoy, was at all times relevant hereto, the duly appointed executive director for the OCCJA in charge of the operations and supervision of the Jail and the individuals in his custody. During the acts and omissions complained of herein, he was acting in such capacity as the agent, servant and employee of the Okmulgee County Criminal Justice Authority. Sam McCoy is sued individually and in his official capacity.

8. Defendant Ronald Spears was at all times relevant hereto, the duly appointed Jail administrator employed by the OCCJA in charge of the operations and supervision of the Jail and the individuals in his custody. During the acts and omissions complained herein, he was acting in such capacity as the agent, servant and employee of the OCCJA. Ronald Spears is sued individually and in his official capacity.

9. Defendant, Julie Bauer, LPN ("Nurse Bauer" or "Defendant Bauer"), was, at all times relevant hereto, an employee and/or agent of BOCC/ OCCJA, who was, in part, responsible for overseeing Mr. Reagan's health and well-being, and assuring that Mr. Reagan's medical and mental health needs were met, during the time he was in the custody of the OCCJA. Nurse Bauer is being sued in her individual capacity.

10. Defendant, Lisa Wilson, Captain ("Captain Wilson" or "Defendant Wilson"), was, at all times relevant hereto, an employee and/or agent of BOCC/OCCJA, who was, in part, responsible for overseeing Mr. Reagan's health and well-being, and assuring that Mr. Reagan's medical and mental health needs were met, during the time he was in the custody of the OCCJA. Captain Wilson is being sued in her individual capacity.

11. Defendant Miguel Rivera, Sergeant ("Defendant Rivera" or "Sergeant Rivera") was at all times relevant hereto, an employee and/or agent of BOCC/OCCJA, who was, in part, responsible for overseeing Mr. Reagan's health and well-being, and assuring that Mr. Reagan's medical needs were met, during the time he was in the custody of OCCJA. Sergeant Rivera is being sued in his individual capacity.

12. 14. Defendant Joseph Terry, Detention Officer ("Defendant Terry" or "D.O Terry") was at all times relevant hereto, an employee and/or agent of BOCC/OCCJA, who was, in part, responsible for overseeing Mr. Reagan's health and well-being, and assuring that Mr. Reagan's medical needs were met, during the time he was in the custody of OCCJA. Sergeant Rivera is being sued in his individual capacity.

## FACTUAL ALLEGATIONS

13. Paragraphs 1-12 are incorporated herein by reference.

14. On January 3, 2020, Mr. Reagan was booked into the Okmulgee County Jail.

15. On January 13, 2020, at approximately 3:00 A.M., Mr. Reagan was discovered by Defendant Sergeant Miguel Rivera, ("Sgt. Miguel") lying on the floor of his cell with an approximate one ("1") inch laceration on the back of his head in what appeared to be a postictal state after having suffered a seizure.

16. Mr. Reagan had suffered the seizure some time before he was discovered by Sgt. Manuel, but it wasn't until 3:00 A.M. that Mr. Reagan's cell mate was able to get the attention of Jail staff.

17. After finding Mr. Reagan, Sgt. Miguel, with the help of Detention Officer Joseph Terry, and Nurse Julie Bauer, placed Mr. Reagan in a wheelchair and transported him to the nursing office for further assessment.

18. Upon arrival to the nursing office, Mr. Reagan's vitals were taken, and it was discovered that Mr. Reagan was not responsive to verbal stimuli.

19. Rather than call 911 for an ambulance to take Mr. Reagan to a hospital for testing and observation, Nurse Bauer, who is not licensed or qualified to prescribe medicine or make a medical diagnosis, made the decision to move Mr. Reagan to another jail cell for further observation.

20. At approximately 3:32 A.M., just thirty ("30") minutes after Mr. Reagan's initial seizure, Nurse Bauer was made aware the Mr. Reagan was having a second seizure. Upon discovery of the second seizure, Mr. Reagan was placed on his side by Jail staff until seizure activity ceased.

21. After suffering a second life-threatening seizure, jail staff **again** decided against calling for an ambulance and instead requested a Jail Transport take Mr. Reagan to the emergency room.

22. At approximately 3:48 A.M., Mr. Reagan suffered a third seizure. During this third seizure, Mr. Reagan's hands tensed at his sides and his head tilted backwards. Mr. Reagan began to take agonal respirations, his eyes became fixed, and he became unresponsive.

23. Nurse Bauer felt for a pulse and checked Mr. Reagan's respirations, at which time neither were found and CPR was initiated by Nurse Bauer.

24. Detention Officer Terry and Captain Wilson brought Bauer AED pads that were placed on Mr. Reagan while CPR continued.

25. It was not until 3:53 A.M., after three seizures, that Captain Wilson decided it was appropriate to call for EMS services.

26. EMS arrived at approximately 4:02 A.M., less than ten ("10") minutes after they were called.

27. By the time the paramedics arrived, the damage had already been done on account that Mr. Reagan had been denied meaningful medical treatment for **over one ("1") full hour** from his first seizure.

28. EMS transported Mr. Reagan to Muskogee Creek Nation Medical Center (MCNMC) where he was admitted at approximately 4:14 A.M.

29. Doctors at MCNMC pronounced Mr. Reagan dead at approximately 5:11 A.M.

30. It took **three** ("3") seizures before Jail Staff made the decision to seek emergency medical help.

31. Jail staff delayed, denied and obstructed the necessary medical treatment in the following respects:

   a. Failing to adequately monitor inmates in the Jail. Mr. Reagan's cell mate attempted to get the attention of Jail staff for an extended period of time after Mr. Reagan suffered his initial seizure.

   b. Failing to call an ambulance after Mr. Reagan's first seizure despite the Defendants' observation that Mr. Reagan was non-responsive to verbal stimuli;

   c. Failing to call an ambulance after Mr. Reagan's seconds seizure in a matter of thirty ("30") minutes.

32. It is important to point out that once notified, EMS arrived within just ten ("10") minutes. In a situation where every second counts, the Defendants failure to call 911 prevented Mr. Reagan from receiving necessary and potentially lifesaving medical care from a licensed physician for over sixty ("60") minutes.

33. Mr. Reagan was not treated, observed or supervised by a physician from the time he suffered his first seizure until he was admitted to MCNMC, seventy-four ("74") minutes after he was discovery by Sgt. Rivera. In fact, Jail staff did not even contact or seek input from a physician regarding a course of treatment for Mr. Reagan.

34. The only medical personnel available at the Jail to treat Mr. Reagan was nurse Julie Bauer, who is a Licensed Practical Nurse (LPN). An LPN is the lowest nursing industry licensure available. LPN's are extremely limited in their scope of practice, yet Ms. Bauer was the sole person responsible for making the medical treatment decisions for Mr. Reagan.

35. With no physician reasonably available to medically supervise the care provided to Mr. Reagan, undertrained personnel were left to practice outside the scope of their training.

36. The Jail staff's failure and refusal to provide any treatment or medical assistance, as set forth *supra*, constitutes deliberate indifference to Mr. Reagan's serious medical needs

37. Mr. Reagan died and suffered, as detailed herein, as a direct and proximate result of Defendants' negligence and deliberate indifference to his serious medical needs.

**Okmulgee County Jail's Unconstitutional Health Care System/ Policies and Customs**

38. The Defendants' deliberate indifference to Mr. Reagan's serious medical needs was in furtherance and consistent with policies which OCCJA and/or BOCC promulgated, created, implemented or possessed responsibility for the continued operation of; policies which OCCJA and/or BOCC had responsibility for implementing and which OCCJA and/or BOCC assisted in developing; and established procedures, customs and/or patters and practices.

39. There are longstanding systematic deficiencies in both the number of medical personnel working at the Jail as well as the training and supervision of those employees. Both Sam McCoy and Ronald Spears have long known of these systematic deficiencies and substantial risks

they pose to inmates, like Mr. Reagan, but failed to take reasonable steps to alleviate those deficiencies and risks.

40. Defendants OCCJA and BOCC maintained a policy, practice and/or custom of understaffing the Jail, with undertrained and underqualified medical personnel who are ill-equipped to evaluate, assess, supervise, monitor or treat inmates, like Mr. Reagan, with complex and serious medical needs.

41. To lower overhead costs, OCCJA and BOCC implemented policies, procedures, customs, or practices to reduce the cost of providing medical and health care services in a manner that would maintain or lower its operating costs

42. Because of a dearth of funding, there is a longstanding policy, practice or custom at the Jail of attempting to reduce overhead costs by not hiring enough Jail staff and then failing to provide the education and supervision necessary for Jail staff. Furthermore, there is a longstanding policy, practice or custom of housing far more inmates than the Jail can reasonably accommodate, purely for financial purposes. The overcrowding has resulted in unsafe and inhumane living conditions for inmates, like Mr. Reagan.

43. In response to the overcrowding at the Jail, in 2014 Jail inmates **rioted** causing over **$10,000** worth of damage to the Jail. John Martin, the Jail Director blamed the riot on extreme overcrowding. When specifically discussing the overcrowding problem, Martin stated that the Jail was originally built for 154 inmates, and, was approved for 226 inmates, but as of September 2014, housed **323** inmates. More than **double** what the Jail was built to house.

44. In 2017, Okmulgee County District Attorney Rob Barris stated that the overcrowding issue was so horrific that "[s]everal times, the jail inspector had indicated if the issue was not corrected, the county would face fines and other sanctions which could cost the taxpayers

tens of thousands of dollars and possibly result in the closure of the jail or the release of numerous inmates from custody back into our communities. This situation, left unchecked, constituted a threat to public safety and represented a major financial burden for the County."

45. To remedy the overpopulation issues in the Jail, Okmulgee residents voted to build a $7 million jail annex that was completed in January of 2017.

46. To make matters worse, State Auditor Cindy Byrd completed an audit of Okmulgee County which found that from 2014 to 2019 elected officials, including the county commissioners, received $382,403.00 in salary overpayments, far exceeding the maximum amounts allowed by Oklahoma law.

47. Defendant Sam McCoy gave an interview in July of 2017 stating that the jail annex was built specifically to remedy overpopulation and to avoid state sanctions. In that interview, Defendant McCoy mentioned that in order to pay for the operation of the Jail, the OCCJA had reached out to the United States Immigration and Custom Enforcement Agency ("ICE") to hold ICE prisoners. Without the ICE contract McCoy stated that Okmulgee would "have a fancy new vacant building and the current facility we built 16 years ago would continue to be massively overcrowded, and we'd be under threat of administrative sanctions."

48. The new Jail annex has since been turned into a wing reserved exclusively for ICE prisoners. The added space has done nothing in the way of alleviating the financial issues that Defendant Sam McCoy stated were plaguing the Jail.

49. To reduce the overhead costs at the Jail, OCCJA and BOCC implemented policies, procedures, customs, or practices to reduce labor costs, including not fully and appropriately staffing the jail in a manner commensurate to the number of inmates.

50. Specifically, OCCJA and BOCC have an established practice of failing to adequately assess and treat--and ignoring and disregarding--obvious or known symptoms of emergent and life-threatening conditions

51. These failures stem from the chronic unavailability of an on-site physician, financial incentives to avoid the costs of inmate prescription medications and off-site treatment and a failure to train and supervise medical staff in the assessment and care of inmates with complex or serious medical needs.

52. As a further result of these financial incentives, Defendants OCCJA and BOCC maintained a policy, practice and/or custom of understaffing the Jail with undertrained and underqualified medical personnel who are ill-equipped to evaluate, assess, supervise, monitor or treat inmates, like Mr. Reagan, with complex and serious medical needs.

53. With effectively no physician oversight of the clinical care, and no physician regularly on-site or reasonably available, the non-physician staff was improperly, and dangerously, expected to act in the role of a physician, with the understanding that off-site care was to be avoided.

54. This system, designed to minimize costs at the expense of inmate care, obviously placed inmates with complex, serious and life-threatening medical conditions, like Mr. Reagan, at substantial risk of harm.

55. Defendants OCCJA and BOCC are, and have been on notice that their policies, practices and/or customs are inadequate to ensure the safety and protection of inmates like Mr. Reagan. Nonetheless, OCCJA and BOCC have failed to reform those policies, practices and/or customs.

56. In the wake of the well documented deficiencies in the Okmulgee County Jail, Defendants Sam McCoy and Ronald Spears have made no meaningful improvements in the training, staffing, and/or supervision of Jail staff.

57. Defendants Sam McCoy and Ronald Spears were on notice that the policy of seeking to cut costs was resulting in a lack of trained Jail employees and placed inmates, like Mr. Reagan, at excessive risk of harm. However, Defendants Sam McCoy and Ronald Spears failed to alleviate the known and obvious risks in deliberate indifference to the rights of inmates like Mr. Reagan.

## CAUSES OF ACTION

### VIOLATION OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES
### (42 U.S.C. § 1983)

58. Paragraphs 1-57 are incorporated herein by reference.

**A. Underlying Violations of Constitutional Rights/ Individual Liability**

59. The Jail staff, including, Defendants Bauer, Wilson, Rivera, and Terry, as described above, knew there was a strong likelihood that Mr. Reagan was in danger of serious harm.

60. Mr. Reagan had obvious, severe and emergent medical needs that were known and obvious to the Jail staff, including Defendants Bauer, Wilson, Rivera, and Terry. It was obvious that Mr. Reagan needed immediate and emergent evaluation and treatment from a physician, but such services were denied, delayed and obstructed. Indeed, Defendants Bauer, Wilson, Rivera, and Terry flatly refused to have Mr. Reagan transported to a hospital even as he was having a seizure and cardiac event directly in front of them. Jail staff, including Defendants Bauer, Wilson, Rivera, and Terry, disregarded the known, obvious and substantial risks to Mr. Reagan's health and safety.

61. As a direct and proximate result of this deliberate indifference, as described above, Mr. Reagan experienced unnecessary physical pain, a worsening of his conditions, severe emotional distress, mental anguish, lost wages, a loss of quality and enjoyment of life, terror, degradation, oppression, humiliation, embarrassment, medical expenses, and death.

62. As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to pecuniary and compensatory damages. Plaintiff is entitled to damages due to the deprivation of Mr. Reagan's rights secured by the U.S. Constitution, including punitive damages.

**B. Municipal Liability (Applicable to OCCJA and BOCC)**

63. Paragraphs 1-62 are incorporated herein by reference.

64. The aforementioned acts and/or omissions of OCCJA and/or BOCC in being deliberately indifferent to Mr. Reagan's health and safety violating Mr. Regan's civil rights are causally connected with customs, practices, and policies which the OCCJA/BOCC promulgated, created, implemented and/or possessed responsibility for.

65. Such policies, customs and/or practices are specifically set forth in paragraphs 38-57, *supra*.

66. OCCJA and/or BOCC had knowledge (either actual or constructive knowledge), or it was obvious, that its health care policies, practices and/or customs in place at the Jail posed substantial risks to the health and safety of inmates like Mr. Reagan.

67. OCCJA and/or BOCC through its continued encouragement, ratification, approval and/or maintenance of the aforementioned policies, customs and/or practices; in spite of their known and obvious inadequacies and dangers; has been deliberately indifferent to inmates', including Mr. Reagan's, health and safety.

68. OCCJA and/or BOCC tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, knew that such conduct was unjustified and would result in violations of constitutional rights, and evinced deliberate indifference to prisoners' serious medical needs.

69. As a direct and proximate result of the aforementioned customs, policies, and/or practices, Mr. Reagan and Mr. Reagan's heirs suffered injuries and damages alleged herein.

### C. Supervisor Liability (Applicable to Defendants Sam McCoy and Ronald Spears)

70. Paragraphs 1-69 are incorporated herein by reference.

71. There is an affirmative link between the aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Mr. Reagan's serious medical needs and policies, practices and/or customs that Defendants McCoy and/or Spears promulgated, created, implemented and/or possessed responsibility for.

72. Defendants McCoy and/or Spears wholly failed to properly train and/or instruct Jail employees in the appropriate and responsible care of inmates, as set forth in paragraphs 38-57, *supra*.

73. Defendants McCoy and/or Spears had knowledge (either actual or constructive knowledge), or it was obvious, that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Mr. Reagan.

74. Defendants McCoy and/or Spears disregarded the known and/or obvious risks to the health and safety of inmates like Mr. Reagan

75. Defendants McCoy and/or Spears, through their continued encouragement, ratification and approval of the aforementioned policies, practices and/or customs, in spite of their

13

known and/or obvious inadequacies and dangers, has been deliberately indifferent to inmates', including Mr. Reagan's, serious medical needs.

76. There is an affirmative link between the unconstitutional acts of their subordinates and Defendants McCoy and/or Spears' adoption and/or maintenance of the aforementioned policies, practices and/or customs.

77. As a direct and proximate result of the aforementioned policies, practices and/or customs, Mr. Reagan and Mr. Reagan's heirs suffered injuries and damages alleged herein.

**WHEREFORE**, based on the foregoing, Plaintiff prays that this Court grant the relief sought, including, but not limited to, damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from date of filing of suit, punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00), reasonable attorney fees, and all other relief deemed appropriate by this Court.

Respectfully submitted,

**SMOLEN LAW, PLLC**

/s/Donald Smolen, II
Donald E. Smolen, II, OBA #19944
Laura L. Hamilton, OBA #22619
John W. Warren, OBA #33635
611 S. Detroit Ave.
Tulsa, OK 74119
(918) 777-4LAW (4529)
(918) 890-4529 (Fax)

*Attorneys for Plaintiff*